UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| AFIMAC U.S. INC., | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Hon. |
| v. | ) | |
| | ) | |
| KELLOGG USA LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# COMPLAINT

Plaintiff AFIMAC U.S. Inc. ("AFIMAC"), by and through its undersigned counsel, respectfully files this Complaint for declaratory relief and breach of contract against Kellogg USA LLC ("Kellogg") and state as follows:

## Nature of the Case

1. In this action, AFIMAC seeks to enforce a contract and related work order under which AFIMAC provided staffing and related services to its business partner, Kellogg. The term of the contract has expired and it is past time for Kellogg to pay AFIMAC its due; but Kellogg is withholding more than $4.6 million in contract payments without legal justification.

2. Kellogg claims AFIMAC failed to perform the contract fully, but to the extent this is true, AFIMAC's performance was plainly excused under the force majeure provision in the contract. That provision excuses any failure to perform that "is caused by an occurrence, event or other matter . . . which is beyond the control of" the parties. Such an "occurrence" beyond the parties' control indisputably happened here, namely, a world-historic pandemic that threw the labor markets into chaos and disrupted AFIMAC's ability to provide Kellogg with 100 percent of the staffing called for under the contract. As such, any failure of AFIMAC to perform was excused

1

under the unambiguous contract terms and Kellogg remains liable to pay for the services AFIMAC did render.

3. Even if the force majeure clause were not triggered here, Kellogg would have no justification to withhold *$4.6 million* because the operable work order unambiguously limits AFIMAC's liability to just $1 million. Any attempt by Kellogg to withhold more than $1 million from AFIMAC therefore cannot be countenanced under any reasonable interpretation of the work order.

4. For these reasons, AFIMAC respectfully requests that the Court enter judgment in its favor for breach of contract in an amount greater than $4.6 million (plus late charges and attorneys' fees, which continue to accrue). In addition, AFIMAC seeks a declaration that any arguable liability of AFIMAC to Kellogg under the applicable work order cannot exceed the $1 million amount set forth in the work order's limitation of liability clause.

## Parties

5. AFIMAC U.S. Inc. is an Ohio corporation with its principal place of business in Cleveland, Ohio.

6. Kellogg USA LLC is successor-in-interest to Kellogg USA Inc. for the purposes of this litigation, and is a Michigan limited liability company. Upon information and belief, no members of Kellogg USA LLC are citizens of the State of Ohio.

## Jurisdiction and Venue

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and, on information and belief, there is complete diversity of citizenship among the parties.

8. This Court has personal jurisdiction over Kellogg because Kellogg's principal place of business is in Michigan and the events giving rise to this suit occurred, in substantial part, in Michigan.

9. Under 28 U.S.C. § 1391(b), venue is proper in this District because Kellogg resides in this District and a substantial part of the events or omissions giving rise to AFIMAC's claims occurred in this District.

**Factual Allegations**

**A.     AFIMAC and Kellogg Execute the Master Contract.**

10. AFIMAC is in the business of providing management, staffing, and temporary labor services to other businesses.

11. On or about April 15, 2015, AFIMAC and Kellogg's predecessor-in-interest, Kellogg USA Inc., executed a Master Staffing and Contract Service Agreement (the "Master Contract").

12. A true and correct copy of the Master Contract, as amended through June 16, 2021, is attached hereto as Exhibit 1.

13. The Master Contract established a framework under which AFIMAC would provide its employees to Kellogg upon Kellogg's request (subject to the terms of the Master Contract), thereby enabling Kellogg to staff important business functions.

14. Exhibit D to the Master Contract is a model Statement of Work ("SOW"). The Master Contract contemplated that each time Kellogg requested employees from AFIMAC, the parties would negotiate and execute an SOW like Exhibit D specifying the number and type of employees Kellogg required, the respective hourly rates for those employees, and other terms relevant to the particular engagement for which Kellogg sought AFIMAC's employees. AFIMAC

would then provide the services called for under the SOW and seek payment from Kellogg under the terms of the SOW.

15. Section 10 of the Master Contract is a limitation of liability clause that provides, in relevant part:

> Limitation on Liability. With respect to any Claims asserted against [AFIMAC] arising from or related to Services or equipment provided pursuant to this Agreement or any act or omission on the part of [AFIMAC] or its personnel, the liability of [AFIMAC] will be limited to Three Million Dollars ($3,000,000) per occurrence and in the aggregate . . . .

Ex. 1.

16. Section 20.10 of the Master Contract is a force majeure clause that provides:

> Force Majeure. Neither party will be liable for any failure to perform its obligations under this Agreement where such failure is caused by any occurrence, event or other matter occurring outside of the geographic vicinity of any Kellogg Facility where Services are performed by [AFIMAC] which is beyond the control of such party, including, without limitation, court order, order of federal, state or local law enforcement authorities, acts of God, acts of war and similar causes.

*Id.*

### B. AFIMAC and Kellogg Execute the Work Order.

17. On or about September 23, 2021, AFIMAC and Kellogg executed a Work Order pursuant to terms set forth in the Master Contract.

18. A true and correct copy of the Work Order is attached hereto as Exhibit 2.

19. Under the Work Order, Kellogg requested that AFIMAC provide it with 1,137 workers to staff various positions, as well as transportation and lodging services for those workers. Under the rates set forth in the Work Order, AFIMAC would charge Kellogg more than $25 million for providing these services.

20. The Work Order was executed under the framework set forth in the Master Contract. It functions as an SOW of the kind contemplated by the Master Contract, though its

specific terms differ somewhat from those set forth in the model SOW attached to the Master Contract as Exhibit D.

21. The Work Order also modifies some of the terms contained in the Master Contract.

22. For instance, the Work Order contains a limitation of liability clause that states as follows:

> **LIMITATION ON LIABILITY:** *Notwithstanding any provision of this Agreement to the contrary*, in any and all events [AFIMAC's] liability under this Agreement shall not exceed One Million Dollars ($1,000,000) in the aggregate, unless a greater amount is paid on a claim against the insurance coverage described above, in which case the amount of such insurance proceeds shall be the limit of [AFIMAC's] liability.

Ex. 2 at p. 3 (emphasis added).

23. The Work Order's limitation of liability clause thus modified the Master Contract by superseding the Master Contract's original limitation of liability clause. Whereas the Master Contract originally limited AFIMAC's liability to $3 million, the Work Order modified that provision by limiting AFIMAC's liability to just $1 million.

24. The Work Order further contained an invoicing and payment provision entitling AFIMAC to late charges and attorneys' fees in the event Kellogg failed timely to pay AFIMAC the amounts owing under the Work Order. That clause provides, in relevant part:

> **INVOICING / PAYMENT:** AFIMAC shall invoice [Kellogg] once every seven (7) days for Services performed and any other fees and expenses provided for under this Agreement. [Kellogg] shall wire transfer the amount of each invoice in full to [AFIMAC] no later than thirty (30) days from the invoice date. *[Kellogg] shall pay late charges of 2.0% per month and the costs, including reasonable attorneys fees, of any collection efforts undertaken by [AFIMAC]* for payments not received by [AFIMAC] within such thirty (30) day period after the invoice is delivered. . . .

*Id.* (emphasis added).

25. Neither the Master Contract nor the Work Order contains a provision permitting Kellogg to set off amounts owed AFIMAC on the basis of a contractual claim against AFIMAC or on any other basis.

**C.    AFIMAC Performs the Work Order to the Greatest Extent Possible Given Disruptions Caused by the COVID-19 Pandemic.**

26. Unfortunately, a world-historic pandemic intervened to disrupt AFIMAC's business, just as it disrupted nearly every business in the country. This of course was the COVID-19 pandemic, which has now killed more than 1 million Americans and caused more than 84 million recorded infections in the country. In response to a surge in infections, AFIMAC experienced an unprecedented number of cancellations from workers slated to work for Kellogg under the Work Order. Resultantly, it was unable to provide Kellogg with the full number of workers called for under the Work Order.

27. AFIMAC worked diligently with Kellogg to minimize the disruptions caused by the pandemic. Working in cooperation with Kellogg, it directed workers to the most integral Kellogg facilities and even agreed to staff Kellogg with additional workers from one of its competitors. Normally AFIMAC does not work with its competitors, but in this case, to best serve its valued partner Kellogg during an unprecedented labor force disruption, AFIMAC agreed to do so. Ultimately, AFIMAC succeeded in minimizing the impact of the pandemic on its performance of the Work Order.

28. In any event, a worldwide pandemic constitutes an "occurrence . . . which is beyond the control of" AFIMAC under parties' contractual force majeure clause. To the extent AFIMAC failed to perform any of its obligations, its performance was excused under the force majeure provision.

29. Notwithstanding the above, AFIMAC duly performed the great majority of its obligations under Work Order. And, in accordance with the provisions set forth in the Work Order, it invoiced Kellogg for the work it performed.

**D.  Without Legal Justification, Kellogg Refuses to Pay AFIMAC Amounts Owed Under the Work Order.**

30. Unfortunately, Kellogg now refuses to pay for many of the services AFIMAC performed under the Work Order. By the end of 2021, Kellogg owed AFIMAC more than $6 million under the Work Order. Kellogg since agreed to pay down some of its obligations to AFIMAC, but as of the date of this filing, it still owes AFIMAC not less than $4,191,550.31 in unpaid compensation under the Work Order

31. In addition, Kellogg owes AFIMAC not less than $443,559.31 in unpaid late charges owed to AFIMAC under the terms of the Work Order. Kellogg's late fees will continue to accrue as time passes.

32. Further, Kellogg is obligated to pay AFIMAC the amount of the attorneys' fees AFIMAC has been forced to expend to collect payments Kellogg owes it under the Work Order. AFIMAC has incurred not less than $19,000 in attempting to collect payments from Kellogg under the Work Order, and it will continue to incur recoverable attorneys' fees as this dispute drags on.

33. AFIMAC has not recovered any insurance proceeds relating to any work performed in connection with the Work Order.

## Count I – Declaratory Judgment

34. AFIMAC incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

35. The Work Order is a valid and enforceable contract binding upon AFIMAC and Kellogg.

13729242.2

36. The Work Order unambiguously provides that AFIMAC's liability thereunder shall not exceed $1 million unless a greater amount is paid on a claim against the insurance covering the agreement (which none has).

37. Nevertheless, Kellogg disputes that AFIMAC's liability under the Work Order is limited to $1 million.

38. The parties' dispute concerning whether the Work Order limits AFIMAC's total aggregate liability to $1 million is a justiciable controversy ripe for review by this Court.

39. The issuance of a declaratory judgment will serve a useful purpose in clarifying and settling the legal relation in issue.

40. The issuance of a declaratory judgment will afford the parties relief from uncertainty, insecurity and controversy giving rise to the proceeding.

41. The Court is therefore empowered to declare the rights and legal relations of the parties under the Work Order pursuant to 28 U.S.C. § 2201.

42. AFIMAC is entitled to a declaratory judgment providing that its liability under the Work Order shall not exceed $1 million in aggregate.

WHEREFORE, Plaintiff AFIMAC U.S. Inc. respectfully requests that this Court enter a declaratory judgment providing that its liability to Kellogg under the Work Order shall not exceed $1 million in aggregate, and granting any other and further relief that the Court deems just and proper.

### Count II – Breach of Contract (Work Order)

43. AFIMAC incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

44. The Work Order is a valid and enforceable contract.

8

13729242.2

45. Kellogg breached the Work Order by failing to pay AFIMAC amounts past due and owing thereunder, including at least $4,191,550.31 in compensation for services rendered, at least $443,559.31 in late charges (which continue to accrue), and at least $19,000 in attorneys' fees (which continue to accrue).

46. AFIMAC has been damaged as a result of Kellogg's breaches of the Work Order in that it has been deprived of the millions of dollars due and owing to it under the Work Order.

WHEREFORE, Plaintiff AFIMAC US Inc. respectfully requests that the Court enter judgment in its favor and against Defendant Kellogg USA LLC in an amount to be proven at trial but not less than $4,650,109.62, and grant any other and further relief that the Court deems just and proper.

Dated this 8th day of June, 2022

Respectfully submitted,

/s/ Jeffrey A. Brauer
Jeffrey A. Brauer
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: 216.621.0150
Fax: 216.241.2824
jabrauer@hahnlaw.com

*Attorney for Plaintiff AFIMAC U.S. Inc.*

13729242.2